UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA LOLA WELSH,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-13-0280-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

  BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 18, 19.) Attorney Dana C. Madsen represents plaintiff; Special Assistant United States Attorney Nicole A. Jibaily represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

  Plaintiff Maria Welsh (plaintiff) protectively filed for supplemental security income (SSI) and disability income benefits (DIB) on February 12, 2010. (Tr. 184.) Plaintiff alleged an onset date of December 1, 2009. (Tr. 161, 168, 184.) Benefits were denied initially and on reconsideration. (Tr. 96, 101, 103.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Marie Palachuk on January 19, 2012. (Tr. 52-91.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 77-84.) Medical experts Margaret Moore, Ph.D. and Richard Hutson, M.D., and vocational expert Sharon Walter also testified. (Tr. 54-77, 84-90.) The ALJ denied benefits (Tr. 24-38) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

  The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born February 6, 1965 (Tr. 77) and was 46 years old at the time of the hearing. She graduated from high school. (Tr. 77.) She obtained a diploma and certificate of completion for medical administrative assistant. (Tr. 78.) She has work experience in customer service and doing clerical, secretarial and administrative work. (Tr. 77-78.) She is bilingual. (Tr. 77-78.) Plaintiff was involved in a car versus train accident resulting in multiple traumas. (Tr. 55, 272.) After initial treatment and rehabilitation, plaintiff continued to have residual problems from the accident. (Tr. 79.) She started having crying spells, was anxious, and felt like something was wrong. (Tr. 79.) She felt like she could not perform normal daily functions. (Tr. 80.) Her only remaining physical problem is that her right hand gets tired when she uses it repetitively. (Tr. 80-81.) She used to type 70 words per minute, but now she types around 30-35 words per minute. (Tr. 80.) She can only use her hand for about three to five minutes before it gets heavy and tired. (Tr. 80-81.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. (Tr. 26.) At step two, the ALJ found plaintiff has the following severe impairments: basilar skull fracture; lumbar fracture at L2-5; closed head injury; right distal ulnar fracture; right scapular fracture; cognitive disorder, not otherwise specified, mild; and depressive disorder. (Tr. 26.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 27.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can never climb ladders, ropes, and scaffolds, but she can occasionally climb stairs and ramps. She can occasionally balance, stoop, crouch, crawl, and kneel. She can frequently use her right upper extremity. She should avoid concentrated exposure to extreme temperatures, wetness, humidity, and vibrations. She should avoid all exposure to unprotected heights and hazards. The claimant is capable of simple, routine, and repetitive tasks. The claimant could not perform production rate or pace of work. Her interaction with the general public can be occasional. Her interaction with coworkers can be superficial.

(Tr. 28). At step four, the ALJ found plaintiff is capable of performing past relevant work. (Tr. 37.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from December 1, 2009, through the date of the decision. (Tr. 38.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to set forth all of plaintiff's limitations in the hypothetical to the vocational expert; (2) failing to properly consider plaintiff's testimony regarding her symptoms and limitations; (3) relying on the testimony of the medical expert rather than the opinions of treating and examining sources. (ECF No. 18 at 13-21.) Defendant argues the ALJ: (1) properly evaluated plaintiff's credibility; (2) properly evaluated the medical evidence; and (3) formulated a reasonable residual functional capacity finding and hypothetical question to the vocational expert. (ECF No. 19 at 5-17.)

## DISCUSSION

**1.     Credibility**

Plaintiff argues the ALJ did not articulate clear and convincing reasons for rejecting plaintiff's testimony regarding pain and other symptoms. (ECF No. 18 at 15-17.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible. (Tr. 29.) Plaintiff argues the ALJ failed to provide any clear and convincing reasons. (ECF No. 18 at 17.) Defendant first argues plaintiff inadequately briefed the credibility issue by failing to address the reasons cited by the ALJ, then argues the ALJ cited three clear and convincing reasons justifying the negative credibility finding. (ECF No. 19 at 5-10.) Plaintiff argues on reply that the issue was not waived because the "purported reasons are so vague, insubstantial and deeply embedded in the six pages of single-spaced medical narrative" and that plaintiff properly argued "the ALJ completely and utterly failed to articulate any clear and convincing reasons." (ECF No. 21 at 2.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

In this case, plaintiff's opening brief did not address the reasons asserted by defendant as reasons cited by the ALJ in support of the credibility finding. The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). However, there is some merit to plaintiff's reply argument that the ALJ's explanation for the credibility finding is difficult to locate in the decision.

The first requirement of the credibility finding is that the reasons be "clear" as well as convincing. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p. Unless there is evidence of malingering, the ALJ may only find a claimant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Although there are nearly six pages of the decision presumably devoted to the credibility finding, the ALJ primarily summarized the evidence with virtually no analytic or explanatory language. (TR. 29-35.) The ALJ's decision falls short of the requirement to clearly explain the reasons given for reject plaintiff's testimony.

Notwithstanding, as defendant points out, the ALJ did cite reasons for rejecting plaintiff's testimony. (ECF No. 19 at 8-10.) First, with regard to plaintiff's mental health, the ALJ observed plaintiff "has not sought the type of counseling one would expect of a person whose depressive symptoms are disabling." (Tr. 33.) The Ninth Circuit has observed that depression "is one of the most under-reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)   Although Plaintiff may have failed to seek psychiatric treatment for her mental condition, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Id.*, quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  In this case, the ALJ acknowledge plaintiff's depressive symptoms worsened over time, consistent with the medical expert's testimony. (Tr. 33, 61.) Thus, it was not appropriate for the ALJ to consider plaintiff's limited mental health treatment as

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

evidence of a lack of a credibility since the failure to recognize the increasing need for mental health treatment could itself be a symptom of plaintiff's mental health problems.

A second reason mentioned by the ALJ in rejecting plaintiff's credibility is that plaintiff left the Work First program for reasons unrelated to the ability to complete work-related tasks. (Tr. 35.) According to the ALJ, plaintiff did not complete the Work First program because the schedule was not consistent. (Tr. 35.) Plaintiff did testify that the Work First program was frustrating because the schedule was not consistent. (Tr. 83.) She testified she told the supervisor how she was feeling with the schedule, "just feeling overwhelmed," and he put her on medical leave. (Tr. 83.) This is consistent with her report to Dr. Charboneau who noted, "She easily becomes overwhelmed. At one point she was attending WorkSource [sic] for four hours a day, followed by two hours of class, and she was not able to cope with this complicated schedule." (Tr. 678.) Although the ALJ asserts plaintiff "did not assert any problems being able to complete work-related tasks," the ability to cope with a schedule is inherent in the ability to work. Furthermore, there is no evidence the Work First schedule was equivalent to a regular work schedule or that plaintiff was otherwise succeeding in the program. Dr. Moore, the medical expert, observed the record does not state the expectations or the complexity of the work at Work First which would weigh into the effect on plaintiff's ability to maintain the schedule. (Tr. 72.) Dr. Charboneau noted plaintiff "was told by her work supervisor that she was apparently not attending to what she was told, but Maria had no idea about this." (Tr. 678.) The Work First evidence is not substantial evidence supporting a clear and convincing reason for finding plaintiff not credible.[1]

The third reason cited by the ALJ in support of the credibility determination is that plaintiff's activities of daily living show plaintiff is independent and able to care for a young child at home without assistance. (Tr. 34.) Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Daily

---

[1] The vocational expert interpreted plaintiff's testimony about her experience at Work First to mean plaintiff was not able to cope with a schedule that varied every day. (Tr. 88.) According to the vocational expert, such a varied schedule is not usually an issue with simple, routine, repetitive work. (Tr. 88.) Notwithstanding, the Work First testimony is not reasonably interpreted as reflecting negatively on plaintiff's credibility.

activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, it is well-established that a claimant need not "vegetate in a dark room" or be "utterly incapacitated" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); *Fair*, 885 F.2d at 603. Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Fair* at *id.* As noted by the ALJ, plaintiff reported caring for her five-year old son, living in her own residence and managing simple chores. (Tr. 34, 621, 678.) The ALJ also points to plaintiff's Function Report dated March 15, 2010 as supporting evidence, yet the Function report states plaintiff cannot use her right arm or shoulder and hand while preparing meals or doing chores; household chores are performed for one hour every four days; and she was living with others and not independently at the time. (Tr. 225-32.) While some of these activities may in some cases reflect the ability to work, in this case plaintiff's reported daily activities do not rise to the level of "performance of physical functions that are transferable to a work setting." Therefore, plaintiff's daily activities do not reasonably suggest a lack of credibility and this is not a convincing reason supported by substantial evidence.

Based on the foregoing, the ALJ failed to cite clear and convincing reasons supported by substantial evidence which justify the credibility finding. The credibility finding is essentially a recitation of the record with little analysis or explanation of the evidence. The reasons asserted by the ALJ are legally and factually insufficient; therefore, the ALJ erred. On remand, the ALJ should reconsider the credibility finding.

**2.    Medical Opinions**

Plaintiff argues the ALJ improperly rejected the opinions of plaintiff's examining psychologists, Dr. Severinghaus and Dr. Charboneau. (ECF No. 18 at 1-21.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are

supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

a. **Dr. Severinghaus**

Dr. Severinghaus prepared a psychological evaluation report dated July 14, 2010. (Tr. 619-25.) He diagnosed cognitive disorder and depressive disorder, mild to moderate severity, well controlled with Zoloft. (Tr. 622.) Dr. Severinghaus found plaintiff's cognitive testing suggests some continuing mild to moderate deficits in memory and cognitive processing. (Tr. 622.) He opined her cognitive functioning would likely be problematic in a work situation. (Tr. 623.) Also noted were mild problems with expressive speech which is not overly disruptive to daily activities but might create more difficulty in a work environment, particularly an environment with moderate to fast past. (Tr. 623.) He found she can manage simple tasks, but more demanding tasks would be challenging. (Tr. 623.)

Plaintiff asserts the ALJ rejected the opinion of Dr. Severinghaus based entirely on the testimony of Dr. Moore, the psychological expert. (ECF No. 18 at 20.) However, Dr. Moore agreed that plaintiff would be limited to "simple, routine, repetitive tasks," (Tr. 64) which is consistent with Dr. Severinghaus' finding that plaintiff "can manage simple tasks" but "more demanding tasks would be challenging." (Tr. 623.) When asked about Dr. Severinghaus' findings, Dr. Moore said plaintiff would be able to maintain the attention and concentration sufficient to maintain a productive pace and stated, "And I think that was one of the benefits of the interaction with Dr. Severin[ghaus]. He's a thoughtful examiner and he made note that there

was no obviously kind of fatigue even after several hours of testing, which is actually pretty rigorous. So I would say yes. With simple repetitive kinds of things." (Tr. 64.) Thus, Dr. Moore's opinion does not contradict Dr. Severinghaus' findings.

Furthermore, the ALJ did not reject Dr. Severinghaus' opinion. In fact, the ALJ gave "significant weight" to Dr. Severinghaus' opinion and found it is consistent with the finding plaintiff is capable of simple, routine, repetitive tasks and she could not perform production rate or pace of work. (Tr. 36.) The ALJ also found the limitations on reviewing psychologist Dr. Beatty's Mental Residual Functional Capacity Assessment dated July 20, 2010, are consistent with Dr. Severinghaus' opinion. (Tr. 35.) Dr. Beatty reviewed Dr. Severinghaus' opinion and agreed that although plaintiff will have problems with complex fast-paced tasks, she remains capable of non-complex one to three step repetitive tasks at a slow to moderate pace. (Tr. 642.) Dr. Bailey affirmed Dr. Beatty's findings. (Tr. 666.) Thus, the ALJ provided no reasons for rejecting Dr. Severinghaus' opinion because the ALJ gave weight to the findings. In addition to Dr. Moore's testimony, the opinions of Dr. Beatty and Dr. Bailey are consistent with Dr. Severinghaus' opinion and the ALJ included in the residual functional capacity finding limitations that are reasonably supported by the evidence. As a result, the ALJ did not err.

  **b.**  **Dr. Charboneau**

Dr. Charboneau completed a neuropsychological assessment on September 2, 2011. (Tr. 676-85.) Dr. Charboneau diagnosed dementia due to head trauma, major depressive disorder and indicated R/O [rule out] posttraumatic stress disorder. (Tr. 685.) Dr. Charboneau opined plaintiff's basic cognitive functions remain intact but she continues to be affected by neuropsychological deficits that significantly impair her ability to work effectively and independently. (Tr. 685.) Her cognitive function falls in the low average range. (Tr. 684.) Dr. Charboneau also opined retraining is likely to succeed. (Tr. 685.) He observed that socio-emotionally she presents with high anxiety, lability, hypervigilance, avoidance and intrusions. (Tr. 684.)

Plaintiff asserts the ALJ rejected the opinion of Dr. Charboneau based entirely on the testimony of Dr. Moore, the psychological expert. (ECF No. 18 at 20.) However, the ALJ actually gave "some weight" to Dr. Charboneau's opinion. (Tr. 36.) The ALJ found the "rule

out" diagnosis[2] of posttraumatic stress disorder mentioned by Dr. Charboneau is not established in the record because Dr. Charboneau is the only psychologist to make that diagnosis and plaintiff did not complain of similar symptoms elsewhere in the record.[3] (Tr. 36.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Dr. Moore also testified that the rule out diagnosis of posttraumatic stress disorder "is a bit of a reach for a diagnosis and [] we can understand the same kind of problems by just looking at the depressive question that we already talked about." (Tr. 62.) Thus, while the ALJ reasonably considered Dr. Moore's opinion regarding the R/O PTSD diagnosis, the ALJ also considered other evidence consistent with that opinion. This is a specific, legitimate reason supported by substantial for rejecting the rule out diagnosis.

Otherwise, the ALJ found the deficits in executive functioning and learning new information identified by Dr. Charboneau would not preclude simple, routine, repetitive tasks. (Tr. 36.) Dr. Charboneau's findings of deficits in neurocognitive ability, including general cognitive proficiency, information processing speed and accuracy, attention/mental control, reasoning, calculation, and memory are encompassed by the finding that plaintiff could not perform production rate or pace of work. (Tr. 36.) This is consistent with the RFC and therefore the ALJ did not err by failing to cite reasons for rejecting this portion of Dr. Charboneau's opinion.

---

[2] A "rule out" diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out. *See U.S. v. Grape*, 549 F.3d 591, 593-94 n. 2 (3rd Cir. 2008); *Williams v. U.S.*, 747 F. Supp 967, 978 n. 19 (S.D.N.Y 1990); *Simpson v. Comm.*, 2001 WL 213762, *7-8 (D. Or. 2001) (unpublished opinion). *See also* Wayne G. Siegel, *Differential Diagnosis of Substance Use Disorders and Other Psychiatric Disorders*, Gary L. Fischler and Associates, PA, http://www.psycheval.com/substance%20_use_disorders.shtml (last visited August 6, 2014) ("Although not part of the formal DSM-IV convention, many clinicians use the term 'rule out' just prior to a diagnosis to indicate that not enough information exists to make the diagnosis, but it must be considered as an alternative.").

[3] Dr. Severinghaus noted, "There is no evidence of clinical anxiety, such as panic attacks, generalized worry, or post-traumatic reactions." (Tr. 621.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

Plaintiff argues that Dr. Charboneau's test results showed current functioning significantly differs from plaintiff's premorbid functioning. (ECF No. 18 at 18-19.) Even if that is the case, plaintiff does not cite any additional functional limitations established by the record based on the change in functioning. As noted by the ALJ during the hearing, any decrease in function is not at issue; rather, the issue is whether plaintiff is disabled pursuant to an analysis under the five-step sequential process. (Tr. 76.) As a result, Dr. Charboneau's expertise as a neuropsychologist regarding the issue of premorbidity is not particularly relevant to the determination of plaintiff's functional limitations during the period at issue.

### c. GAF Scores

Plaintiff argues the ALJ erred by failing to provide specific, legitimate reasons for rejecting the GAF scores assessed by Dr. Severinghaus (45) and Dr. Charboneau (42). (ECF No. 18 at 20.) Clinicians have used a GAF to rate the psychological, social, and occupational functioning of a patient.[4] The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). The ALJ cited Dr. Moore's testimony that GAF scores are not meant to be used in a legal context. (Tr. 36, 65-66.) Dr. Moore pointed out the GAF score is a clinical tool that is subjective by nature, based on impressions of an evaluator at one moment in time. (Tr. 66.) The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the newest version of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, the DSM–V.[5] For these reasons, the ALJ reasonably rejected the GAF scores as an indicator of disability.

---

[4] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

[5] "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its

**3.    Hypothetical**

Plaintiff argues the ALJ "made up" a hypothetical which did not include the limitations and symptoms found by Dr. Severinghaus and Dr. Charboneau. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallenes*, 881 F.2d at *id.* As discussed *supra*, the ALJ reasonably incorporated limitations assessed by Dr. Severinghaus and Dr. Charboneau supported by the record. However, the ALJ failed to make a legally sufficient credibility finding. As a result, the RFC and hypothetical to the vocational expert is in question. The matter must therefore be remanded for a new credibility finding.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should reconsider the credibility finding and, if appropriate, cite clear and convincing reasons supported by substantial evidence justifying any negative credibility finding. If necessary, the ALJ should then reconsider the remainder of the sequential process, as is appropriate.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(ECF No. 18)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.    Defendant's Motion for Summary Judgment **(ECF No. 19)** is **DENIED**.

3.    An application for attorney fees may be filed by separate motion.

---

descriptors) and questionable psychometrics in routine practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5TH Ed. at 16.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED August 20, 2014

                                              *s/Fred Van Sickle*
                                              Fred Van Sickle
                                     Senior United States District Judge